**In the United States District Court
for the District of Kansas**

---

**In re: CCA Recordings 2255 Litigation**,
          **Petitioners,**

v.                                         **Case No. 19-cv-2491-JAR-JPO**

                                                  (**This Document Relates to Case No. 12-cr-20003-JAR-3**, *United States v. Steven M. Hohn*, **and Case No. 19-cv-2082-JAR-JPO,** *Steven M. Hohn v. United States*)

**United States of America.**
          **Respondent.**

---

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Steven M. Hohn's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. 2255 (Doc. 718).[1] Petitioner alleges the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications and asks the Court to find that he has made a sufficient showing to warrant an evidentiary hearing. As a remedy, he asks the Court to vacate his judgment with prejudice to refiling or alternatively, to vacate his sentence and impose a new sentence of 180 months, a 50% reduction of his original custodial sentence.[2] The government has responded and Petitioner has replied. For the reasons explained in detail below, subject to certification pursuant

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, Case No. 12-20003-JAR-3. Citations prefaced with "*CCA Rec. Lit.*, Doc." refer to filings and entries in this consolidated case, Case No. 19-2491-JAR-JPO. With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

[2] Evidentiary hearings in these consolidated cases were originally scheduled to begin January 26, 2021 and continue until completed. Pursuant to Administrative Rule 2021-02 to the COVID-19 pandemic, all in-person hearings scheduled to begin before March 31, 2021, have been continued subject to further order of the Court.

to Rule 2(b) of the Rules Governing Section 2255 Proceedings, the Court finds that an evidentiary hearing is warranted because the record before the Court does not conclusively show that Petitioner is not entitled to relief on his 28 U.S.C. § 2255 motion.

## I.     Background

### A.     Procedural History

In May 2012, a federal grand jury in Kansas returned a 20-count second superseding indictment against Petitioner and fourteen co-defendants. Petitioner was charged with five counts, including conspiracy to possess with intent to distribute and to distribute fifty grams or more of methamphetamine, three counts of possession of a firearm by a user of a controlled substance, and possession of an unregistered short barreled shotgun.[3] On June 5, 2013, Petitioner was convicted on all five counts after a twelve-day jury trial.[4] On January 28, 2014, Petitioner was sentenced by Judge Carlos Murguia to 360 months' imprisonment, followed by a five-year term of supervised release.[5] Petitioner filed a direct appeal to the Tenth Circuit Court of Appeals, on multiple grounds, which affirmed.[6] The mandate was entered April 23, 2015.[7]

The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in this matter on July 17, 2018.[8] On February 12, 2019, the FPD filed the pending motion on

---

[3] Doc. 84.

[4] Doc. 316.

[5] Doc. 477. The court also assessed Petitioner $500 and ordered him to forfeit all ammunition and thirteen firearms. *Id.* at 6–8.

[6] *United States v. Hohn*, 606 F. App'x 902 (10th Cir. 2015).

[7] Doc. 577.

[8] D. Kan. Standing Order 18-3 (July 17, 2018), http:/www.ksd.uscourts.gov/wp-content/uploads/2018/07/Standing-Order-18-3-Appointing-FPD.pdf.

2

Petitioner's behalf. Petitioner is currently housed at Fort Worth, FMC, with a projected release date of August 19, 2037.[9]

### B. The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motions before the Court.[10] That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein. The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events that came to light in the *Black* case and investigation, including the existence of audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA. The government admits that it obtained videos from CCA in connection with the *Black* case, which focused on drug and contraband trafficking inside CCA. The government's possession of these recordings came to light in August 2016, when then-Special Assistant United States Attorney ("SAUSA") Erin Tomasic and AUSA Kim Flannigan accused defense attorney Jacquelyn Rokusek of "jeopardiz[ing] their investigation" in *Black*.[11] The defense also discovered that the United States Attorney's Office for the District of Kansas ("USAO") had

---

[9] Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited Feb. 3, 2021).

[10] Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019). As discussed in that Order, petitioners' Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA"). That facility has since been renamed CoreCivic. For convenience, the Court refers to it as CCA in this Order.

[11] *Id.* at 70–80.

3

routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[12]

Once notified of the video and audio recordings, this Court ordered (1) all local federal detention facilities to cease recording attorney-client meetings and phone calls;[13] (2) the video and audio recordings in USAO custody to be impounded;[14] and (3) the government to preserve its computer hard drives.[15] By October 11, 2016, the Court had appointed a Special Master to assist in what the Court termed "Phase I and Phase II" of the Court's investigations, that is, determining the number of recordings possessed by the government and how to index and segregate them, and to identify privileged or confidential information within those recordings.[16] The government did not cooperate with the Special Master's investigation, however, and its failure to cooperate ultimately resulted in a lengthy delay in this Court's ability to rule on these issues. Finally, despite the delay associated with the government's failure to cooperate and its litigation efforts challenging the propriety of the Special Master's investigation, the Court conducted a full evidentiary hearing on all pending matters in this case in October and November 2018.

On August 13, 2019, the Court issued the *Black* Order, which detailed, among other things, the government's practice of obtaining attorney-client communications and its view that these communications are not protected, and whether the "preamble" language that played at the

---

[12] *Id.* at 29.

[13] *Black*, Doc. 253 at 3.

[14] *Id.* at 3 & 12 ("The Court subsequently issued a clawback order directing the government to gather and surrender to the Court all audio recordings in its possession, in the possession of investigative agencies, and in the possession of other defendants who had received them in discovery.").

[15] *Id.* at 40. At the September 7, 2016 hearing in *Black*, "[t]he Court ordered the government to retain and preserve all of the hard drives as well as all of the hardware necessary to access the information on the hard drives." *Id.*

[16] *Black*, Doc. 146 (Appointment Order).

4

beginning of Securus telephone calls constituted a waiver of the attorney-client privilege.[17]  The Order also addressed the applicable standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[18]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit decision in *Shillinger v. Haworth*,[19] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[20]  Once those elements are established, prejudice is presumed.[21]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[22]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists, and (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the

---

[17] *Black* Order at 101–06.

[18] *Id.* at 145–62.

[19] 70 F.3d 1132 (10th Cir. 1995).

[20] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[21] *Id.*  If the government has a legitimate law enforcement purpose for its intrusion, however, the per se rule does not apply and a defendant would have to show proof of prejudice.  *Id.* at 155.

[22] *Id.* at 163.

client.[23]  This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[24]

### C.     Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[25]  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties.  Although the underlying criminal cases were not reassigned as part of that Order, after Judge Murguia resigned from the bench, Petitioner's case was reassigned to this Court for all further proceedings on February 21, 2020.[26]

The Court likewise assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.  As detailed in the Court's October 15, 2020 Orders, the parties' initial efforts at cooperation culminated in the government's notice that it refuses to comply with discovery orders and demands that the Court rule immediately on both the procedural and merits defenses raised in its responses to the § 2255 motions.[27]  Highly

---

[23] *Id.* at 166.

[24] *Id.*

[25] *CCA Rec. Lit.*, Doc. 1.

[26] Doc. 740.

[27] *CCA Rec. Lit.*, Docs. 587, 588.

6

summarized, the Court: (1) reaffirmed its previous ruling on the government's implied waiver argument and, in light of the government's blanket objections to petitioners' privilege logs, established a procedure for *in camera* review of the recordings; (2) ordered petitioners asserting audio recording claims to supplement the record with affidavits on the issue of waiver; (3) ordered the parties to supplement their responses and replies to address jurisdictional defenses and the collateral-attack waiver by plea agreement issue; (4) found the government's refusal to comply with discovery orders issued by the Court is sanctionable under Fed. R. Civ. P. 37(b)(2) and notified the government of its intent to take as conclusively established certain facts petitioners might have proved regarding the "privy to" element of their Sixth Amendment claims with respect to any petitioner who establishes that he or she is entitled to an evidentiary hearing; and (5) to the extent it is not rendered moot, the Court sets the Rule 37(e) spoliation sanctions matter for evidentiary hearing.[28]

On January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-attack waiver by plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[29]

### D.     Recordings in this Case

Pending trial, Petitioner was detained at CCA from January 27, 2012, through March 28, 2014.  Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls that he made from CCA may be monitored and recorded and advising him that calls with his attorney were subject to being monitored unless he followed the privatization procedure in

---

[28] *Id.*

[29] *Id.* Doc. 730.

7

place to make an unmonitored call.[30]  While at CCA, Petitioner called his attorney, James Campbell, to discuss his case.

Per the parties' agreement, as part of the *Black* investigation, the government began surrendering recordings and derivative evidence of audio calls from CCA that were in its possession.[31]  The government produced the recording of the call in Petitioner's case to the Court on January 7, 2019, and copies were provided to the FPD on January 9, 2019.[32]  The FPD reviewed one audio recording of Petitioner speaking by telephone with Campbell on April 23, 2012.[33]  Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communication, verifying that during this phone conversation, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Campbell.[34]  Petitioner also provided a sworn Declaration from Campbell, stating that he reviewed the recording of the call listed on the privilege log placed on April 23, 2012, and confirms that during this call: (1) after the call was transferred by the receptionist, he and Petitioner were the only two individuals on the line; (2) the matters discussed related to legal advice or strategy sought by Petitioner, as detailed in the log and the declaration; (3) he had no knowledge nor did he believe that the call was subject to monitoring or recording as they were attorney-client protected, that he did not consent to such, and that he did not inform Petitioner before the call was made that it was subject to such monitoring and recording in a manner that would be dispensed to prosecutors; and (4) until later litigation and information revealed that phone calls were being monitored and turned over to the

---

[30] *Hohn v. United States*, D. Kan. No. 19-2082-JAR-JPO, Docs. 3-2, 3-3.

[31] *Black*, Doc. 705.

[32] *Id.*, Doc. 806-3 at 3.

[33] *CCA Rec. Lit.*, Doc. 205-2 at 68.

[34] *Id.*

8

USAO or its agents, he had no reason to know or believe that his legal calls were being monitored or released to the government and, after the became known, he privatized his numbers with CCA.[35]

Petitioner was prosecuted by AUSA Terra Morehead. Morehead was aware that during her involvement in the case there were several requests made for audio recordings of telephone calls Petitioner made from CCA due to concerns of threats to government witnesses, which were reviewed by agents in February 2012.[36] Morehead avers that on or about April 24, 2012, Johnson County Sheriff Office Personnel obtained Petitioner's CCA calls in connection with a homicide investigation, and that reports regarding these calls were made by the agents and provided to Campbell during discovery.[37] Morehead further avers that the government issued a subpoena to CCA and requested calls made by Petitioner between May 13 and 28, 2013, which coincided with the jury trial and concerns that he was communicating with government witnesses.[38] Morehead avers that she was never made aware by agents who reviewed the CCA calls that there was any recording of communications between Petitioner and defense counsel, and denies listening to or requesting anyone on her behalf to listen to any such recordings.[39]

In an amended affidavit attached in support of Petitioner's § 2255 motion filed February 13, 2019, Campbell states that at the lengthy sentencing hearing on January 28, 2014, AUSA Morehead played many recorded calls made by Petitioner from CCA.[40] Campbell avers that he received copies of those calls from Morehead, but does not recall receiving any recorded

---

[35] *Id.* Doc. 703-1.

[36] *Hohn*, D. Kan. 19-2082-JAR-JPO, Doc. 3-1 at 2 ¶ 8.

[37] *Id.*

[38] *Id.*

[39] *Id.* ¶¶ 9, 10.

[40] Doc. 720-1.

attorney-client calls, nor was he ever advised that Morehead had any recorded attorney-client calls. In fact, he states, he does not recall ever receiving attorney-client calls—his or any other attorney's—in discovery, that he was not aware that his calls had been recorded in any case until the *Black* litigation, and that he was unaware that his call with Petitioner was recorded until he was contacted by the FPD.

After the government objected to Petitioner's privilege log, the Court reviewed the audio recording *in camera*.[41] As set out in the privilege log, the Court confirms that the content of the six-minute call contains discussion relating to legal advice or strategy, including: Petitioner's desire to have a trial in the matter, his criminal history, what he believed the evidence against him to be and problems with that evidence, and the general way that they would proceed to meet and discuss the case going forward.[42] At the beginning of the call, a recorded preamble states the following language: "This is a call from an inmate at CCA-Leavenworth Detention Center. This call is subject to recording and monitoring." There is no discussion of this preamble between Petitioner and Campbell in the call listed in the privilege log, nor any statements acknowledging the warning or evincing awareness that the call was being recorded during their conversation.

Pursuant to the Court's order, Petitioner supplemented the record with a sworn statement addressing the issue of waiver with respect to the audio recording claim.[43] Petitioner acknowledges signing the Inmate Handbook, but does not recall reading it before he placed the call to Campbell or that he understood that his attorney-client calls could be recorded unless he took certain steps.[44] He also acknowledges reading and signing the Monitoring of Inmate

---

[41] *CCA Rec. Lit.*, Docs. 355, 588.

[42] *Id.* Doc. 205-2 at 68.

[43] *Id.* Doc. 588 at 59, 61.

[44] *Id.* Doc. 665-1.

10

Telephone Calls sheet prior to making the call to Campbell, but at the time he signed the monitoring sheet, nobody informed him that he had the right to speak privately with counsel and that if he waived that right, CCA could provide his recorded attorney-client calls to the USAO or that the government could use those calls against him in court. He also avers that he did not know that by signing the document, he was consenting to the monitoring and/or recording of his attorney-client calls unless he took certain steps, or that he was consenting to CCA giving the recordings to the USAO and its agents. Petitioner further avers that at the time he placed the calls listed on the privilege log, he did not take steps to ensure his attorney-client calls were not monitored or recorded. Petitioner states that at the time he placed the call, he did believe that the recorded preamble applied to attorney-client calls, that the written warning signs placed on or near the telephone applied to attorney-client calls, and that his attorney-client calls were subject to monitoring or recording, but he did not believe that the USAO or its agents could obtain recordings of his attorney-client calls from CCA.

     Accordingly, the Court overrules the government's objections to the privilege log and finds that Petitioner has met the threshold showing for a protected communication. The Court further finds that the Declarations submitted by Petitioner and Campbell create issues of disputed material facts regarding whether Petitioner waived his Sixth Amendment rights by placing the call despite signing the documents, the preamble warning, and signage.

11

## II.     Procedural Defenses

### A.     Procedural Default

Courts usually will not entertain a § 2255 motion if the movant did not raise the claim on direct appeal.[45] "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments."[46] If the government raises a procedural bar, courts must enforce it unless cause and prejudice or a miscarriage of justice is shown.[47]

As a threshold issue, the Court first addresses whether Petitioner's claim falls within an exception to the procedural default doctrine for claims that could not be presented without further factual development. The Supreme Court has determined that the procedural default doctrine is inapplicable during collateral proceedings where the petitioner's claim is based on facts that were outside the appellate record and not open to consideration and review on direct appeal.[48] Courts will thus dismiss a procedural default defense where the factual predicate for the petitioner's claim is not within the appellate record and further factual development is necessary to resolve the claim.[49]

---

[45] *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012); *see United States v. Frady*, 456 U.S. 152, 165 (1982).

[46] *United States v. Snyder*, 871 F.3d 1122, 1126–27 (10th Cir. 2017) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)).

[47] *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994).

[48] *Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (holding procedural default doctrine inapplicable where the claim rests on facts that were "dehors the record and their effect on the judgment was not open to consideration and review on appeal" (quoting *Waley v. Johnston*, 316 U.S. 101, 104 (1942) (per curiam))).

[49] *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 504–05 (holding that a § 2255 motion is preferable to a direct appeal because, when a claim is brought on direct appeal, "appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate" for the purpose of litigating or preserving the claim); *United States v. Chalan*, 438 F. App'x 710, 712, (10th Cir. 2011) (unpublished) (recognizing that "if the factual predicate for a claim is not available, it would appear

12

Here, the facts regarding Petitioner's Sixth Amendment claim were neither in the record nor available for consideration and review on direct appeal. The government bases its argument on the fact that Petitioner's claim "might have" been reasonably available to him before he was sentenced on January 28, 2014, based on AUSA Morehead's affidavit stating that it remains a possibility that some of Petitioner's calls obtained from CCA might have been produced to Campbell prior to sentencing, which means Petitioner would have been in possession of the call at issue before he was sentenced," and thus his claim would be procedurally defaulted.[50] The Court disagrees.

First, in response to the government's invocation of the procedural bar, Campbell has submitted an affidavit stating that although he received copies of the recorded calls that the government played at Petitioner's sentencing hearing, he does not recall receiving any recordings of attorney-client calls, nor did the government advise him that it had or was producing such recordings.[51] In light of this, the Court agrees that the government must come forward with some evidence that it actually did produce Petitioner's recorded attorney-client call to Campbell, evidence that would be within its control.[52] The government has not done so.

Second, even if the government's discovery would have enabled Petitioner to verify before his September 2014 sentencing and subsequent appeal that the government had requested and obtained his attorney-client calls, this knowledge in and of itself would not have been

---

to qualify under *Bousley* as a 'claim[] that could not be presented without further factual development'" (alteration in original) (quoting *Bousley*, 523 U.S. at 621–22)).

[50] *Hohn*, No. 19-2082-JAR-JPO, Doc. 3 at 5–6.

[51] Doc. 720-1.

[52] *See., e.g.*, *Mitchell v. United States*, D. Kan. No. 17-cv-2380-JAR-JPO, Doc. 7, Ex. C (government's response to § 2255 motion attaching multiple pages of detailed call logs from CCA provided by SAUSA Tomasic to defense counsel in discovery); *CCA Rec. Lit.* Doc. 588 at 37–39 (sustaining petitioners' objections to Rule 6 discovery on the topic of the government's procedural defenses).

13

sufficient to prove a per se Sixth Amendment violation under *Shillinger*, because Petitioner must also demonstrate that the government intentionally became privy to his protected communications.[53]  The critical facts necessary to Petitioner's Sixth Amendment claim were not available to him either in district court or on direct appeal.  Here, facts establishing the USAO's conduct with respect to the audio recordings were not available until this Court held the full evidentiary hearing in *Black* in October 2018.

Moreover, the government's varying positions on this issue diminishes the credibility of its procedural-default argument.  First, the government has insisted the Court dismiss § 2255 motions raising similar *Black*-related claims without a hearing unless the petitioner could demonstrate that a video of the petitioner meeting with counsel at CCA "actually exist[ed]."[54]  Second, the government has argued to the district court that it must dismiss pretrial motions for relief on the same grounds.[55]  Third, the government has argued to the Tenth Circuit that the Sixth Amendment claim at issue was "cognizable only as a § 2255 motion," and urged the Tenth Circuit to reject such a claim on direct appeal as factually unsubstantiated.[56]  The Tenth Circuit agreed, noting the "absence of record evidence" to support the claim.[57]  And finally, the Department of Justice has taken a contrary position when it informed the Court that § 2255

---

[53] *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

[54] *See, e.g.*, *Johnson v. United States*, D. Kan. No. 18-04099-JAR-JPO, Doc. 2 at 5 (asking this Court to dismiss the petitioner's Sixth Amendment claim without a hearing because the petitioner merely "speculate[d]," but had not yet verified, the existence of a video depicting the petitioner meeting with his attorney).

[55] *See, e.g.*, *United States v. Duarte-Tello*, D. Kan. No. 16-20016-DDC-2, Doc. 256 at 4 (arguing the defendant's motion to dismiss should be denied because, *inter alia*, the defendant did not "claim to have any evidence of any such soundless videos involving [the defendant] and counsel in his immediate possession"; asserting the defendant could not rely on facts derived from the *Black* litigation to support his own claim); *United States v. Velazquez*, D. Kan. No. 16-20031-CM, Doc. 280 at 4 (same).

[56] Brief for Appellee, *United States v. Harssfell*, 735 F. App'x 553 (10th Cir. 2018) (No. 17-3235), 2018 WL 3241028, at *13–15.

[57] *Id.* at 554.

14

provides the "appropriate mechanism" for raising an intentional intrusion Sixth Amendment claim.[58] As this Court previously noted, had Petitioner argued his claim before the district court or on direct appeal, he likely would have met with the same result—it is not a great leap to predict that the government would have taken the stance that his Sixth Amendment claim was cognizable only on collateral review. Thus, Petitioner's failure to pursue his Sixth Amendment claim for relief in district court and on appeal is excepted from procedural default.[59]

Even if the procedural default defense was available to the government, however, Petitioner can establish cause and prejudice. To establish cause, a defendant must "show some external objective factor—such as governmental interference, unavailability of the relevant factual or legal basis, or ineffective assistance of counsel—prevented him from raising the issue on direct appeal."[60] "Cause excusing procedural default is shown if a claim 'is so novel that its legal basis [wa]s not reasonably available to counsel' at the time of the direct appeal."[61] The factual basis for Petitioner's Sixth Amendment claims was not reasonably available to him at the time of his direct appeal, due in large part to the government's strategy of delay, denial, and deflection in the *Black* case and its handling of attorney-client recordings, including Petitioner's.[62] The existence and scope of potential Sixth Amendment claims was not certain until January 2019 for audio recording claims, well past Petitioner's sentencing and deadline for filing a direct appeal.

---

[58] *Black*, Doc. 713 at 35 ("AUSA Clymer has argued in at least three briefs filed in these proceedings that the 'appropriate mechanism' for investigation of any Sixth Amendment violations is 28 U.S.C. § 2255 . . . ." (citing *Black*, Doc. 697 at 41–42)).

[59] *See Bousley v. United States*, 523 U.S. 614, 621–22 (1998).

[60] *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012); *see United States v. Zander*, 723 F. App'x 617, 619 (10th Cir. 2018).

[61] *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017) (alteration in original) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

[62] *See generally Black* Order.

To establish prejudice, a defendant "must show that the error of which he complains is an 'error of constitutional dimensions' that 'worked to his actual and substantial disadvantage.'"[63] Where a petitioner raises a Sixth Amendment claim in which prejudice is presumed, that prejudice is not just a mere possibility of prejudice, but is a sufficient basis to establish prejudice under the procedural default rule.[64] If Petitioner's Sixth Amendment allegations are proved correct, extant Tenth Circuit law directs that "a prejudicial effect on the reliability of the trial process must be presumed."[65] Therefore, Petitioner can establish prejudice under the procedural default doctrine.

Accordingly, the Court denies the government's motion to dismiss Petitioner's Sixth Amendment claim on procedural default grounds.

**B.    Timeliness**

"Section 2255(f) establishes a one-year limitations period for filing a § 2255 motion. The limitations period commences on the latest of four dates."[66] Petitioner relies upon subsection § 2255(f)(4), "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." This subsection "is an example of what

---

[63] *Snyder*, 871 F.3d at 1128 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[64] *See, e.g.*, *Garza v. Idaho*, 139 S. Ct. 738, 742 (2019) (clarifying presumption of prejudice stemming from counsel's failure to perfect appeal applies "regardless of whether the defendant has signed an appeal waiver," and stating prejudice is presumed "with no further showing from the defendant of the merits of his underling claims" (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000))); *Jones v. Cowley*, 28 F.3d 1067, 1073 (10th Cir. 1994) (reversing and remanding, finding cause-and-prejudice standard met if counsel failed to perfect petitioner's appeal in violation of petitioner's right to counsel since prejudice is presumed); *United States v. Skurdal*, 341 F.3d 921, 928 (9th Cir. 2003) (finding that, because the denial of counsel under the circumstances was "prejudicial per se," petitioner "demonstrated cause and prejudice for the failure to raise the contentions on direct appeal"); *Rosenwald v. United States*, 898 F.2d 585, 587 (7th Cir. 1990) (holding the prejudice inquiry under procedural-default doctrine for petitioner's Sixth Amendment conflict-of-interest claim turns on the merits of the claim given that prejudice either must be presumed or requires something less than "the full showing of prejudice usually required under *Strickland*").

[65] *Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995).

[66] *United States v. Denny*, 694 F.3d 1185, 1188 (10th Cir. 2012).

are called 'discovery rules' for delaying the accrual of a cause of action."[67]  The Tenth Circuit has explained that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") rule differs from most discovery rules in one respect:  "[t]he typical provision starts the limitations period either (1) when the plaintiff has actually discovered the pertinent facts or (2) when a person exercising reasonable diligence would have discovered those facts.  The AEDPA provision contains only the second test, an objective standard."[68]  "The exercise of reasonable diligence is an ongoing process.  What is required at any particular time depends on what one has notice of at that time."[69]  "It is irrelevant whether that information has come to the defendant's attention by serendipity or diligence."[70]  "The question is whether the defendant acted with reasonable diligence after the information was acquired.  And once the defendant could have discovered the pertinent facts, the § 2255 motion must be filed within one year."[71]

In this case, Petitioner filed his § 2255 motion on February 12, 2019.  His motion is therefore timely under § 2254(f)(4) unless "the facts supporting" his intentional-intrusion claim "could have been discovered through the exercise of due diligence" on or before February 11, 2018.[72]  The government contends that if AUSA Morehead gave the attorney-client calls to Campbell during discovery prior to sentencing, then Petitioner could necessarily have discovered the factual predicate for his claim at that point and he would have had one year from the date his

---

[67] *Id.* at 1189.

[68] *Id.*

[69] *Id.* at 1190.

[70] *Id.*

[71] *Id.*

[72] 28 U.S.C. § 2254(f)(4); *see United States v. Hurst*, 322 F.3d 1256, 1260–62 (10th Cir. 2003) (explaining that "the day of the act" that triggers the clock is not included in the § 2255(f) calculation; holding that "the one-year period of limitations applicable to [petitioner's] § 2255 motion commenced" the day following the date his conviction becomes final (quoting Fed. R. Civ. P. 6(a))).

17

judgment became final on June 30, 2015 to raise his Sixth Amendment claim to be considered timely under § 2255(f)(4). In support, the government cites *Johnson v. United States*, where the issue before the Supreme Court was whether a state-court order that vacates a petitioner's prior state court conviction at the petitioner's request constitutes a "fact"—as opposed to a legal proposition—for purposes of § 2254(f)(4).[73] The Court addressed "the question of how to implement the statutory mandate that a petitioner act with due diligence in discovering the crucial fact of the vacatur order that he himself seeks," concluding that any due diligence is shown by prompt action by the petitioner in seeking the state vacatur order,"[74] an event within the petitioner's control. Thus, the Court held that an order vacating a petitioner's state conviction is a fact for purposes of § 2255(f)(4), but the one-year "period begins when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court."[75]

By contrast, the Court agrees that Petitioner had no such element of control over when or if the facts that form the basis of his Sixth Amendment claim occurred. Instead, he must show that "a person exercising reasonable diligence would [not] have discovered" the facts supporting his claim more than one year before that claim was filed.[76] Here, it is not apparent that Petitioner would or even could have discovered the facts needed to support his claim prior to his sentencing in 2014. As previously discussed, Campbell has no recollection of receiving recordings of Petitioners' attorney-client calls, evidence of which is in the government's control to produce. In addition, similar to its analysis of the procedural default defense, the Court agrees that the

---

[73] 544 U.S. 295, 301–02 (2005)

[74] *Id.* at 308–09.

[75] *Id.* at 298.

[76] *United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012).

18

government's possession of that call would not have been sufficient, in and of itself, to prove a per se Sixth Amendment claim under *Shillinger*. Even assuming that Petitioner had some reason to suspect the government had not only possessed the recording of his attorney-client call but also became privy to it, this suspicion would have been insufficient to trigger any obligation to assert a Sixth Amendment claim. Instead, "due in large part to the government's strategy of delay, denial, and deflection in the *Black* case and its handling of attorney-client recordings,"[77] it was not until at least the October 2018 evidentiary hearing that evidence supporting the privy-to element of Petitioner's claim came to light. Because Petitioner filed his § 2255 motion less than a year after the October 2018 hearings, his February 12, 2019 motion is timely under § 2255(f)(4).

## III. Discussion

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[78] The Supreme Court has interpreted this statutory language to mean that a hearing is unnecessary in those instances (a) "where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and records' in the trial court," or (b) where the motion alleges circumstances "of a kind that the District Judge could completely resolve by drawing upon [their] own personal knowledge or recollection."[79]

---

[77] *United States v. Phommaseng*, No. 15-20020-JAR, 2019 WL 3801720, at *8 (D. Kan. Aug. 13, 2019) (ruling that "[t]he existence and scope of potential Sixth Amendment claims was not certain until January 2019 for [the petitioner's] audio recordings claim" because it was not until then that the government admitted to obtaining the petitioner's recorded attorney-client calls).

[78] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting 28 U.S.C. § 2255(b)); Rule 4 of the Rules Governing Section 2255 Proceedings.

[79] *United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019) (quoting *Machibroda v. United States*, 368 U.S. 487, 494–95 (1962)).

A § 2255 petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[80] An evidentiary hearing is not necessary where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[81]

Given the record before it, the Court finds genuine factual disputes remain as presented in the parties' affidavits and concludes that it must conduct an evidentiary hearing in this case. Thus, subject to Rule 2(b) certification of his motion, the Court grants Petitioner an evidentiary hearing on his Sixth Amendment claim, specifically, the question of whether the government intentionally interfered with his attorney-client relationship by intentionally and unjustifiably becoming privy to his attorney-client communications while detained at CCA.

**IT IS THEREFORE ORDERED BY THE COURT** that an evidentiary hearing is **granted** on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, subject to Rule 2(b) certification of his motion. The Court will discuss the hearing date and other pretrial matters with the parties at a status conference to be scheduled at a future date.

**IT IS SO ORDERED.**

Dated: February 8, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[80] *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009).

[81] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995) ("[T]he allegations must be specific and particularized, not general or conclusory."); *United States v. Fisher*, 38 F.3d 1143, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that are merely conclusory in nature and without supporting factual averments).